# UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

_____

No. 95-30128
(Summary Calendar)
_____

WAYNE TORRES and PAULINE CLINE
TORRES,

Plaintiffs-Appellants,

versus

STATE FARM FIRE AND CASUALTY
INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
(CA-89-837)

_____

(October 24, 1995)

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]


Plaintiffs Wayne and Pauline Torres filed a breach of contract action to recover damages from State Farm Fire and Casualty Insurance Company ("State Farm") under a fire insurance policy for the total destruction of their home. State Farm claimed that the Torreses were barred from recovering under their policy because they were responsible for the fire that destroyed their home.

---

Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

After a bench trial, the district court entered judgment for State Farm.  The Torreses appeal the judgment, arguing that it is not supported by the evidence.[1]  We affirm.

I

The district court found the following facts.  Wayne Torres and his ex-wife Annette Cook owned the house that was destroyed by fire.  Although Wayne and Annette had been divorced for almost a year, they had not yet reached a community property settlement.  At the time of the fire, Wayne was remarried and living in the house with his new wife, Pauline Torres.  The house was located in a rural area near homes owned by Annette Cook and her family.  Pauline Torres did not like living in a home owned by her husband and his ex-wife, nor did she like living in such close proximity to his ex-wife and her family.

After attending a birthday party for Pauline, the Torreses decided to visit a friend named Martha Schultz whom they had not seen for seven or eight months.  Ms. Schultz did not know the Torreses were coming to visit, and the Torreses did not know exactly where Ms. Schultz lived.  The Torreses showed up around 10:00 p.m. and discovered that Ms. Shultz was attending to her daughter who was sick.  Ms. Shultz's daughter was so ill that approximately one hour after the Torreses left, Ms. Shultz had to

---

[1] The Torreses also argue that even if they are responsible for the arson, Wayne Torres' ex-wife, Annette Torres Cook, the other named insured who still owns half of the house, is entitled to her portion of the insurance proceeds because she had nothing to do with the arson.  Because the Torreses did not raise this issue at trial, we decline to reach it.  *See Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (declining to address issue raised for the first time on appeal).

take her to the hospital. Nevertheless, the Torreses stayed at the Schultz's home for almost two hours, leaving briefly to buy a bottle of whiskey. Eventually the Torreses left the Schultz's home and drove home to discover the fire.

Wayne's brother Gerald had also had a similar fire which destroyed his house, and he had collected under his insurance policy with State Farm. Financial records from one of Wayne's businesses had allegedly burned in Gerald's fire. At the time of the Torreses' fire, Wayne and Gerald had judgments against them totalling $37,000. After Wayne's fire, a mortgage of $35,621.04 was paid off which relieved Wayne and Gerald of responsibility for a business loan which was secured by the house. A $6,000 mortgage on the house was also satisfied after the fire.[2]

Wayne wanted to move Pauline out of the house and neighborhood because of the lingering presence of his ex-wife Annette and her family. The insurance proceeds the Torreses would have obtained from the fire was substantially more than they could have received if they had sold their home. The Torreses also expected that it would be less trouble to collect the fire insurance proceeds than to try to sell their home.

In addition, the Torreses thought they would receive substantial funds from the loss of the contents of their home. In fact, they made a number of misrepresentations in connection with their claim for the contents of their home. At trial, Pauline

---

It is unclear from the record whether State Farm paid off both of these mortgages, or whether Wayne was able to settle them because of the fire.

asserted for the first time that she had lost $10,000 cash in the fire. She had not submitted this cash in her claim to the insurance company nor had she mentioned it in her deposition.

II

The Torreses contend that there was not enough evidence to support the district court's finding that they were responsible for the fire that destroyed their home. Under Louisiana law, whether an arson defense is adequately proven is a question of fact. *Del-Remy Corporation v. Lafayette Insurance Co.,* 616 So.2d 231, 234 (La. App. 1993). We review a district court's findings of fact under the clearly erroneous standard. FED. R. CIV. P. 52(a); *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985). The district court emphasized that much of its decision was based on its determination of the credibility of the witnesses. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson,* 470 U.S. at 575, 105 S. Ct. at 1512.

Under Louisiana law, arson is an affirmative defense which an insurer must establish by convincing proof in order to deny a claim for fire insurance proceeds. *Chisholm v. State Farm Fire & Casualty Co.,* 618 So.2d 1059, 1062 (La. App. 1993). To establish arson, the insurer must prove (1) that the fire was of incendiary

origin, and (2) that the plaintiff was responsible for the fire. *Id.* The insurer may prove arson through circumstantial evidence. "Proof of motive plus establishment of the incendiary origin of the fire, in the absence of credible rebuttal evidence, is sufficient to sustain the affirmative defense of arson." *Id.*

The Torreses do not dispute that the fire was of incendiary origin. The only issue they appeal is whether there was enough evidence to establish that they were responsible for the fire. The evidence established that the Torreses believed that the destruction of their home would solve many of their problems)) financial and marital. The Torreses believed they would receive a substantial amount of money for their home and its contents. This money could have brought about a settlement of Wayne and Annette's community. The money could also have been used to purchase a new home and furnishings for Wayne and Pauline to start a new life together, away from Wayne's ex-wife. The fire also neatly disposed of several mortgages on the home and relieved Wayne and Gerald of responsibility for a business loan.

The coincidence of both Wayne and Gerald's houses burning down cannot be overlooked. Since Gerald had collected insurance proceeds from State Farm, the fire no doubt seemed an easy solution to Wayne's financial and marital problems. In addition, at the time of Wayne's fire, both brothers had outstanding judgments against them for which the insurance proceeds would have been useful.

The court doubted the Torreses' credibility and found that

their activities on the night of the fire were "strange to say the least." Indeed, their prolonged visit to Ms. Schultz's home seemed more indicative of people trying to waste time (while the fire was being set) than visiting a long-lost friend. The court also noted several other problems and inconsistencies in the Torreses' testimony. The Torreses failed to present any convincing evidence regarding the cause of the fire. During the twenty-one years that Wayne had lived in the house there had never been any vandalism or crime in the area. There was no evidence that a third party wanted to burn down the Torreses' home.

The Torreses' inability to account for their financial affairs provided further proof of their wrongdoing. In response to State Farm's request for his financial information, Wayne could neither identify the name of his CPA nor furnish business records from his slaughterhouse business. He also claimed that some of his financial documents had been destroyed in his brother Gerald's fire. Wayne said he owned thirteen guns, but despite having a separate $5,000 policy on the guns, he did not claim them to State Farm as part of his personal property lost in the fire. Most troubling was the $10,000 cash Pauline allegedly lost in the fire, which she spoke of for the first time at trial.

All of these inconsistencies and inadequacies support a reasonable inference that the Torreses had moved property from their home before the fire, and that they were trying to hide financial problems and profit from the fire. Given the strong emphasis that the court placed on the credibility of the witnesses,

and the substantial proof of financial and marital motives we hold that the district court's finding that the Torreses were responsible for the fire was not clearly erroneous.

III

For the foregoing reasons, we AFFIRM the district court's judgment.